# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

ARTHUR SEAL,

                 Petitioner,          :    Case No. 1:16-cv-392

     - vs -                             District Judge Michael R. Barrett
                                      Magistrate Judge Michael R. Merz

JEFFREY NOBLE, Warden,
  London Correctional Institution
                                    :
               Respondent.

# REPORT AND RECOMMENDATIONS

Petitioner Arthur Seal brought this action *pro se* under 28 U.S.C. § 2254 to obtain relief from his conviction in the Highland County Court of Common Pleas on counts of illegal manufacturing of drugs, illegal assembly/possession of chemicals for the manufacturing of drugs, and endangering children.

## Procedural History

Seal was indicted on the three counts of conviction by the Highland County grand jury on October 2, 2012. The case was tried to a jury on Seal's plea of not guilty and he was convicted on all counts. On December 10, 2012, he was sentenced to mandatory consecutive prison sentences totaling fourteen years. He appealed *pro se* to the Ohio Fourth District Court of Appeals which affirmed the conviction. *State v. Seal*, 2014-Ohio-4167, 20 N.E.3d 292 (4th Dist. 2014)("*Seal I*"), appellate jurisdiction declined, 142 Ohio St. 3d 1411 (2015). During the pendency of the appeal,

Seal filed a motion to obtain access to the 911 recording that led the police to the property where the methamphetamine lab in suit was located. The trial court denied the motion because an appeal was pending and because the recording was a public record obtainable under the Public Records Act, Ohio Revised Code § 149.43. Seal appealed and the Fourth District affirmed. *State v. Seal*, 2014 WL 4674299 (4th Dist. Sep. 16, 2014)("*Seal II*"), appellate jurisdiction declined, 142 Ohio 1411 (2015).

Seal filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 on June 14, 2013. The trial court denied the petition. Seal again appealed to the Fourth District which affirmed the trial court. *State v. Seal*, 2014-Ohio-5415, 2014 WL 6908391 (4th Dist. Dec. 4, 2014)("*Seal III*"), appellate jurisdiction denied, 142 Ohio St. 3d 1453 (2015). On November 20, 2014, Seal filed an application to reopen his direct appeal under Ohio R. App. P. 26(B). The Fourth District denied relief. *State v. Seal,* Case No. 13CA1 (4th Dist., Jan. 23, 2015)(unreported; copy at ECF No. 13-1, PageID 585)("*Seal IV*"), appellate jurisdiction declined, 142 Ohio St. 3d 1453 (2015).

On February 26, 2016, Seal filed a motion for leave to file a delayed motion for new trial under Ohio R. Crim. P. 33(B) on the basis of new evidence. The trial court denied relief and the Fourth District affirmed. *State v. Seal,* 2017-Ohio-116, 75 N.E.3d 1035 (4th Dist. Jan. 9, 2017)("*Seal V*"), appellate jurisdiction declined, 149 Ohio St. 3d 1433 (2017).

Seal filed his habeas corpus Petition in this Court on March 11, 2016, the date he mailed it to the Court from prison. He pleads the following grounds for relief[1]

> **GROUND ONE:** The State violated Petitioner's 5th and 14th Amendments trial counsel also violated the petitioner's 6th Amen. right to effective assistance of counsel.

---

[1] The Grounds for Relief are quoted verbatim from the Petition. The Magistrate Judge has not add *sic* to mark the spelling and usage errors in the interest of not interrupting the flow and not wishing to show any disrespect to the Petitioner.

**Supporting Facts:** The State knew that a camper on Rob Coburns property was a storage unit but isolated the camper at trial as the petitioner's home to convict the defendant therefore there was two housing units which the statute on child endangering requires proof that the child be in the same housing unit and within 100 feet. Trial court committed plain error and counsel was ineffective for not giving the jury the proper elements.

**GROUND TWO:** I was denied the right to the effective assistance of Appellant counsel as guaranteed by the 5th 6th and 14th Amendments of the U.S. Const.

**Supporting Facts:** The charges of Manufacturing and possession of chemicals to manufacture and Child Endangering are Allied Offenses of similar import and should be merged together. Trial Court committed plain error, Appellant counsel was ineffective, and this placed the Petitioner in double jeopardy. The manufacturing and possession of chemicals clearly merge under the statute of O.R.C.§ 2941.25(A).

**GROUND THREE:** Petitioner's Six Amendment rights was violated Appellant counsels was ineffective and trial court violated Petitioner's Fifth and 14th Amend, due process of the law.

**Supporting Facts:** The trial court restricted the State witnesses' testimony to the camper and barred any questioning of the house, the trial court restricted the police officer's testimony. The Petitioner was prevented from establishing that the witness was manufacturing.

**GROUND FOUR**: Petitioner was denied due process of law, in violation of the 5th, 6th 14th Amendment of the United States Constitution.

**Supporting Facts:** The trial court abused its discretion and violated Petitioner's rights when it denied the petitioner request pursuant to the Ohio Public Records Act for the alleged 911 call that the State alleged was the basis for the illegal search and seizure and the charges brought against him.

**GROUND FIVE:** The petitioner's due process was violated, the State violated the petitioner 4th, 5th, 6th and 14th Amendments of the U.S.

**Supporting Facts:** The petitioner presented credible evidence the State withheld exculpatory evidence, that the police fabricated the existence of a 911 call, and the ensuing search was unconstitutional and renders Petitioner's conviction void. The dispatch log that I recovered from the sheriff's states:

> Received call from unknown male (937) 661-4239. advised he needed a sheriff at 50/Chari subject then said there here and phone went dead. 3614 will check. Officer Seaman showed up at 5094 US RT. 50. claiming the sheriff office receive 911 To waive the 4th Amendment, and Seaman began his illegal search of the property, and house. Then the officer swore to 911 call and claimed be smelled ether to obtain a search warrant. Then testified all through trial to a 911 call, and testified that he smelled ether to make it appear an emergency existed, were the petitioner was staying.

**GROUND SIX:** I was denied Effective Assistance of Trial Counsel, violating 4th, 5th, 6th, and 14th Amendments of the United States Constitution.

**Supporting Facts:** Trial counsel should have filed a motion to suppress the evidence collected in the unlawful search. The petitioner provided evidence that their was no 911 call. The dispatch log doesn't give an address, any reasonable competent attorney would have filed a motion to suppress. Robert Coburn stated the camper was storage. The petitioner even had a few things stored in it. The police also found couple pieces of petitioner's old mail, to a different address in the camper. Petitioner was temporary residing at Coburn's residence. I had a reasonable expectation of privacy at the property. The State isolated the camper as petitioners residents. This was counsel reason for not filing a motion to suppress because the petitioner did not live in a camper that the State now confirms as storage.

**GROUND SEVEN:** I was denied effective assistance of trial counsel violating my 4th, 5th, 6th, and 14th Amendments of the U.S. Constitution.

**Supporting Facts:** Trial counsel failed to conduct any investigation prior to trial failed to present a valid defense, or create a record for appeal or subpoena any witnesses. Robert Coburn confirms a camper as storage in his backyard, and claims possession, of the residence in the Affidavit to the search warrant. The State and their only witness, Mark Ervin claimed, I lived in this camper, and was

making METH. This isolated the trial to the camper to convict the petitioner. Trial counsel never questioned the home owner Robert Coburn. There was witnesses there to testify I was in the house, and had walked outside. Then during the search of Coburn's and Mark Ervin's rooms, there was three pseudoephed (sic) receipts, clear liquids Damprid lithium batteries pill crusher coffee filter, etc. Counsel failed to bring this issues (sic) to the record. The appellant court confirms the camper as storage, and places me in possession of Coburns residence with mail to a different address.

**GROUND EIGHT:** I was denied effective assistance of trial counsel, violating my 4th, 5th, 6th, and 14th Amendments of the United States Constitution.

**Supporting Facts:** Trial counsel William Armintrout labored under an actual conflict of interest. The conflict adversely affected his performance. Trial counsel presented no defense against the State's star witness Mark Ervin. At know time did Armintrout disclose his conflict of Interest to petitioner. The conflict prevent trial counsel from filing further discovery and motions.

Exhibit B 1-8 in the motion for a new trial demonstrates. Mark Ervin was charged with a felony 3, October 13, 2010 for Illegal Assembly, or possession of chemicals to manufacture METH. Mark Ervin did purchase muratic acid, pseudpoephed, Further in the Affidavit Terry Finely admits that Mark Ervin was getting items to make METH Ervin was also suspected of trying to steal Drano. The petitioners name is implicated in this. Petitioner was not aware of this or questioned or involved. Armintrout Plead Ervin down to M-1, the court place no contact for Ervin to stay away from petitioner.

The case at hand Mark Ervin was arrested for METH and used in affidavit, to gain a search warrant June 4, 2012,which is now part of the record. The Affidavit to the search warrant is designed to charge the defendant for the alleged meth lab June 4th 2012. The next day an active warrant for over purchase of pseudoephed was recalled and dismissed on Ervin this was concealed by the state.

Trial counsel never challenged, the anonymous 911 call that supposedly come from, some unknown location, trial counsel never challenged the B.C.I. lab results, that states clear liquid, counsel stipulated to the B.C.I. Results and let officer Seamen testify to a smell of ETHIER, and a 911 call that doesn't factually exist. Counsel let Ervin testified to one theft at trial. Ervin testified to the process of making meth to convict the petitioner. Trial counsel knew this testimony was false.

Either Mark Ervin is allowed to make METH, or Highland County Police let him build a case against petition to escape his prior charges. Ervin has more meth related manufacturing charges than what trial counsel represented him on.

**GROUND NINE**: The State withheld exculpatory evidence and impeaching evidence of the State's witness violating petitioner 5th, 6th, and 14th Amendment to the U.S. Constitution.

**Supporting Facts:** The State withheld Mark Ervin criminal record, withheld probation violation and the courts no contacts to stay away from petitioner? June 4, 2012, Officer Seaman was responding to an anonymous 911 call. Mark Ervin was found in possession of METH. Ervin told the police, Petitioner was cooking METH in a Camper. This information was used to obtain a search warrant then later petitioner was indicted.

Mark Ervin testified to one theft. Then Mark Ervin gave testimony to the manufacturing process to convict the petitioner. The State was letting Ervin testify to get his felony 5 of possession of METH dropped to an M-1. In the State discovery November 20, 2012, the State provided one theft charge for Mr. Ervin.

On June 17, 2010, Mark Ervin was charged for possession of METH, a felony 5 and charge for chemicals to manufacture METH a felony 3. The court dropped the METH charge and reduce the felony 3 to M-1, the court then placed no contact between Ervin and I. I wasn't questioned or involved.

A few months later October 13, Ervin again was charged with Chemicals to make METH a felony 3, again the court dropped this to a M-1, once again Ervin implicated the petitioner in the Affidavit I was not questioned or involved then after the state used Mark Ervin, in the affidavit to the search warrant aimed at petitioner June 4, 2012, the next day the State with drew an active warrant and dismissed Ervin's over purchase of pseudoephed charge June 6, 2012, the main ingredient for METH.

The petitioner maintains his innocence. While petitioner's direct appeal was pending. A Bill of Particular was filed Nov. 3, 2014. Ervin is admitting to manufacturing meth, in apartment in Hillsboro. In April 11, 2014, then finally Nov. 19, 2014, Mark Ervin plead guilty to 2 Illegal assembly possession of Chemicals to manufacture. Exhibits A(l-10) B(l-8) C(l-2) E(l-2) F(l-2) G(l-4) H and I(l-4) fully support these facts in the motion for a new trial.

**GROUND TEN:** The State violated petitioner 4th, 5th, 6th and 14th Amendments of the U.S. Constitution.

**Supporting Facts:** The State withheld exculpatory evidence demonstrating Robert Coburn as the perpatrature and would have established ownership of the Illegal activity, and established possession of property.

The State isolated a camper that was used for storage, as petitioner home to convict the petitioner for a lab on Robert Coburn property June 4, 2012, Robert Coburns house was suspect to a METH lab and Coburn was found in possession of METH, November 26, 2012. The Petitioner trial was December 3, 2012, Defendant attached (Exhibit J-1 through 2) in the motion for new trial.

The non disclosed evidence would have compelled the petitioner to subpoena the owner Robert Coburn. Demonstrating that it was Coburn and the State star witness, manufacturing. June 4, 2012, It would have showed Coburn was in possession of the lab June 4th, 2012, and November 26, 2012, Coburn could have testified how he wasn't charged for active mix in a camper on his property June 4, 2012, that the state was convicting the petitioner for.

The state would not need to proceed any further to miss lead the court and the jury, to put the petitioner in possession of Coburn, active mix and property June 4, 2012, with frivolous mail to a different address and the police testifying that they seen petitioner at a different location at a camper That appeared to be the camper at Coburn's house June 4, 2012.

(Petition, ECF No. 1).

# Analysis

## Ground One:  Conviction on Insufficient Evidence; Ineffective Assistance of Trial Counsel

In his First Ground for Relief, Seal asserts the evidence presented at trial was insufficient to convict him of child endangering.  He also alleges his defense attorney provided ineffective

assistance of trial counsel when he failed to give the jury "the proper elements." (ECF No. 1, PageID 5.) Respondent defends the First Ground on the merits (Return, ECF No. 14, PageID 905-16).

**Sufficiency of the Evidence Standard**

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), two

levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 204-5 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S.

> 1, ___, 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (*per curiam*). And
> second, on habeas review, "a federal court may not overturn a state
> court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S.
> ___, ___, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (per curiam).


**Ineffective Assistance of Counsel Standard**


The governing standard for ineffective assistance of trial counsel was adopted by the

Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or death sentence has
> two components.  First, the defendant must show that counsel's
> performance was deficient.  This requires showing that counsel was
> not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.  Unless a
> defendant makes both showings, it cannot be said that the conviction
> or death sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.  466 U.S. at 687.  In other
> words, to establish ineffective assistance, a defendant must show
> both deficient performance and prejudice.  *Berghuis v. Thompkins,*
> 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556
> U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly
> deferential. . . .  A fair assessment of attorney performance requires
> that every effort be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.


**Application to Ground One**


Seal presented his First Ground for Relief to the Fourth District on direct appeal. That court held:

[*P16] On appeal, Seal asserts the following assignments of error for our review:

First Assignment of Error:

THE DEFENDANT WAS IMPROPERLY CONVICTED OF CHILD ENDANGERING AS THE STATE FAILED TO PROVE THE APPLICABLE ELEMENTS OF CHILD ENDANGERING, THE TRIAL COURT COMMITTED PLAIN ERROR IN GIVING INSTRUCTIONS ON THE WRONG ELEMENTS AND TRIAL COUNSEL WAS INEFFECTIVE.

11

Second Assignment of Error:

THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

[*P17] In his first assignment of error, Seal contends that he was improperly convicted of the endangering children charge under R.C. 2919.22(B)(6). Seal offers three distinct arguments in support of his assignment of error, all of which depend on the threshold issue of whether the camper constitutes a "housing unit" as contemplated by the statute.

[*P18] R.C. 2919.22(B)(6) provides:

>(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age: * * *

>(6) Allow the child to be on the same parcel of real property and within one hundred feet of, or, in the case of more than one housing unit on the same parcel of real property, in the same housing unit and within one hundred feet of, any act in violation of section 2925.04 or 2925.041 of the Revised Code when the person knows that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division.

The State presented evidence that Seal's minor daughter, G.S., was located in the house on the same parcel of real estate as the methamphetamine lab and within 100 feet of the lab. The trial judge also instructed the jury that in order to convict Seal of the endangering children charge, the jury would need to find beyond a reasonable doubt that Seal "did allow a child under the age of 18 years . . . to be on the same parcel of real property, and within 100 feet of any act in violation of Section 2925.04, which refers to the violation alleged in count one, or 2925.041 which refers to the violation alleged in count two, when [he knew] that the act [was] occurring whether or not [he] is prosecuted for or convicted of the violation of either section of the Revised Code that is the basis of the violation of this division." [Transcript at 201.] Seal asserts that the State's evidence was insufficient to convict him of the charge, and that the trial court's instruction was improper, because in his view, the house and camper are separate "housing units." Thus, Seal contends that the State was required to prove that G.S. was located

within 100 feet of the methamphetamine lab and in the same housing unit as the lab, a circumstance Seal argues is impossible given the testimony that the lab was located in the camper and G.S. in the nearby house. Seal also asserts that his trial counsel was ineffective for failing to make this argument in support of his Crim.R. 29 motion, and for failing to object to the trial court's jury instruction.

[*P19] All three of Seal's arguments depend on whether the camper is a "housing unit." The term "housing unit" is not defined in the statute, however; and thus we must interpret the statute. "The interpretation of a statute is a question of law that we review de novo." *State v. Bundy*, 2012-Ohio-3934, 974 N.E.2d 139, ¶ 46 (4th Dist.).

> "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute. The court must first look to the plain language of the statute itself to determine the legislative intent. We apply a statute as it is written when its meaning is unambiguous and definite. An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language."

*Id*., quoting *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9.

[*P20] While R.C. 2901.04(A) requires courts to liberally construe criminal statutes in favor of the accused, "'courts do not have the authority to ignore the plain and unambiguous language of a statute under the guise of either statutory interpretation or liberal construction; [instead], the court must give effect to the words utilized.'" *State v. Snowder*, 87 Ohio St.3d 335, 336-337, 1999 Ohio 135, 720 N.E.2d 909 (1999), quoting *Morgan v. Ohio Adult Parole Auth*., 68 Ohio St.3d 344, 347, 1994 Ohio 380, 626 N.E.2d 939 (1994). "Thus, if the meaning of a statute is unambiguous and definite, a court must apply it as written and no further interpretation is necessary." *Bundy* at ¶ 47.

[*P21] Here, the plain and unambiguous language of R.C. 2919.22(B)(6) supports the conclusion that the camper involved in this case is not a separate housing unit as envisioned by the General Assembly. Because the term "housing unit" is not defined in the statute or elsewhere in the Ohio Revised Code, we give it its common everyday meaning. The United States Census Bureau defines the term as follows:

A housing unit is a house, an apartment, a mobile home or trailer, a group of rooms, or a single room that is occupied, or, if vacant, is intended for occupancy as separate living quarters. Separate living quarters are those in which the occupants live separately from any other persons in the building and which have direct access from the outside of the building or through a common hall.

* * *

Both occupied and vacant housing units are included in the housing unit inventory, except that recreational vehicles, boats, vans, tents, railroad cars, and the like are included only if they are occupied as someone's usual place of residence. * * *

https://www.census.gov/popest/about/terms/housing.html.

[*P22] The evidence presented in this case does not demonstrate that the camper was intended as separate living quarters for Seal or anyone else. For one, the camper apparently did not have its own power source, as indicated by the extension cord that ran from the camper to the house. There was no testimony indicating that the camper was connected to a water source, had sufficient plumbing, or that the camper had been assigned a separate address from the house. The photographs of the camper and its contents that were admitted as evidence show no indication that the camper was used as someone's usual place of residence. To the contrary, the camper appears to be nothing more than a place to manufacture illicit drugs and to store someone's personal belongings. This conclusion is consistent with Detective Croy's testimony that the camper was being used for manufacturing methamphetamine. We also note that Rebecca Atkin's [sic] specifically testified that she dropped G.S. off at the "white house" for court ordered visitation with Seal.

[*P23] This is not to say that a camper or trailer can never be a housing unit. However, in analyzing the evidence in this case in accordance with the common meaning of "housing unit", we conclude that the camper here is not a separate housing unit. Thus, the State was not required to prove the additional element that G.S. was located in the camper. Likewise, the trial court's jury instruction was not improper; and trial counsel's failure to argue the additional element did not amount to the ineffective assistance of counsel. Accordingly, we overrule Seal's first assignment of error.

*Seal I,* 2014-Ohio-4167.

Questions of the correct interpretation of an Ohio statute are questions of state law on which this habeas corpus court is bound by decisions of the state courts. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C.J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J., concurring).

In this case the Fourth District interpreted the relevant Ohio statutes and then determined that the evidence presented at trial was sufficient to prove guilt beyond a reasonable doubt under that interpretation. In doing so, it was deciding the Fourteenth Amendment question presented by *Jackson v. Virginia*, *supra*. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The Fourth District carefully considered the evidence and concluded it was satisfactory under that court's interpretation of the relevant Ohio statutes. The Magistrate Judge concludes the decision was not an objectively unreasonable application of *Jackson*. Therefore, Petitioner's insufficient evidence claim is without merit. Because the Ohio courts did not interpret the statute

in the way Seal argues it should have, it did not constitute ineffective assistance of trial counsel to fail to argue for that incorrect interpretation. The First Ground for Relief should therefore be dismissed.

**Ground Two: Double Jeopardy**

In his Second Ground for Relief, Petitioner claims all three counts of conviction should have been merged under Ohio Revised Code § 2941.25 and he received ineffective assistance of appellate counsel when his appellate counsel did not make this argument on direct appeal. He raised this particular claim as his first omitted assignment of error in his Rule 26(B) application. The Fourth District first determined that Ohio Revised Code § 2941.25 does not apply to the endangering children conviction because

> [I]t is clear from the language of [Ohio Revised Code §] 2919.22(B)(6) that the General Assembly intended to permit multiple punishments for the violations of that statute and the predicate offenses of illegal manufacture of drugs/illegal possession or assembly of chemicals when the drug is methamphetamine and the offense was committed within 100 feet of a child.

*Seal IV*, ECF No. 13-1, PageID 590 at ¶ 15. Based on its own prior precedent and the fact of record, it found the other two offenses were not committed by the same conduct and therefore did not come within the Ohio Supreme Court's decision in *State v. Johnson*, 128 Ohio St. 3d 153 (2010). *Seal IV*, ECF No. 13-1, PageID 590-92 at ¶¶ 16-19. Because the assignment of error would have been unsuccessful, it was not ineffective assistance of appellate counsel to raise that assignment of error. *Id* at PageID 592,¶ 20.

In deciding this assignment of error, the Fourth District applied Ohio law to determine whether the offenses of conviction were allied offenses of similar import required to be merged

under Ohio Revised Code § 2941.25. Its interpretation of the Ohio statute is binding on this Court. While the question of Double Jeopardy was not per se raised, the Fourth District's decision provides the required finding for that claim. The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985). *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.") The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself. *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing Albernaz*. "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe, citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989). An Ohio court of appeals decision of a double jeopardy claim which is limited to the application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim. *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014). "What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

In *Seal IV* the Fourth District applied the *Strickland* precedent as it applies to appellate counsel. Its decision was a reasonable application of *Strickland*: if an assignment of error is without merit, it cannot be ineffective assistance of appellate counsel to fail to raise it. Petitioner's Second Ground for Relief is therefore without merit.

**Ground Three: Denial of Confrontation Rights**

In his Third Ground for Relief, Seal contends that the trial court violated his Confrontation Clause rights by restricting his counsel's cross-examination of one of the State's witnesses. In his 26(B) application he asserted he received ineffective assistance of appellate counsel when this issue was not raised on direct appeal. The Fourth District considered this claim in *Seal IV*, finding that Seal's specific claim was that his attorney was not permitted "to cross-examine Marc Ervin, a key witness for the State, about Ervin's own possession of drugs at the time of the law enforcement search." *Seal IV*, ECF No. 13-1, PageID 592 at ¶ 21. Noting that a trial judge "retains wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination based on concerns about issues such as harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or irrelevant," the Fourth District decided

> Despite Seal's claims, Ervin admitted on cross-examination that he was receiving a plea deal in his own criminal case arising from the same events in exchange for his testimony. Ervin also admitted that he had a prior theft conviction, that he was a methamphetamine user; and that he had methamphetamine on his person on the day of the incident Thus, Ervin's credibility and potential bias were effectively called into question and the trial court had no duty to permit Seal to ask additional questions on this topic. Accordingly, we find that Seal has not made a showing that appellate counsel was ineffective for failing to raise the Confrontation Clause argument.

*Id.* at ¶ 23. In other words, since the trial judge did not violate Seal's Confrontation Clause rights,

it was not ineffective assistance of appellate counsel to fail to claim that there was a violation.

The Fourth District's decision parallels those made by the Supreme Court which has held "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 681 (1986). The Sixth Circuit has held "[t]his includes discretion to impose limits based on concerns about harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or only marginally relevant. *Boggs v. Collins*, 226 F.3d 728, 736 (2000), *citing Van Arsdall* and *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999)." The Confrontation Clause protects the right to cross-examine as to bias, motive, or prejudice, but not as to general credibility. *Olson v. Little*, 2015 U.S. App. LEXIS 3812 (6th Cir. 2015), citing *Boggs v. Collins*, 226 F.3d 728, 737-38 (2000).

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353 (1963); *Anders v. California*, 386 U.S. 738 (1967); *United States v. Cronic,* 466 U.S. 648 (1984). The right to counsel is limited to the first appeal as of right. *Ross v. Moffitt*, 417 U.S. 600 (1974). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).

> To evaluate a claim of ineffective assistance of appellate counsel, . . .the court must assess the strength of the claim that counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id..* If a

> reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id.*

*Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011. The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).

The Fourth District's decision in Seal IV indicates that while a Confrontation Clause assignment of error could have been raised on direct appeal because some limits were placed on the cross-examination of Marc Ervin, the assignments would very likely or certainly have been unsuccessful. Thus there was no ineffective assistance of appellate counsel in failing to raise that claim and the Third Ground for Relief should be dismissed.

**Ground Four:  Denial of Public Records Request**

In his Fourth Ground for Relief, Petitioner claims the trial judge abused his discretion and

violated Petitioner's constitutional rights when he denied a public records request for the 911 call that apparently started the whole police investigation in this case. Petitioner has withdrawn this Ground for Relief (Reply, ECF No. 19, PageID 1251.

**Ground Five: Withholding of Exculpatory Evidence; Police Misconduct; Unconstitutional Search**

In his Fifth Ground for Relief, Petitioner asserts his due process rights were violated by the State's withholding exculpatory evidence, by police fabrication of the initiating 911 call, and by the unconstitutionality of the search which produced the evidence against him.

Seal first presented this claim in his petition for post-conviction relief under Ohio Revised Code § 2953.21 (State Court Record, ECF No. 13, PageID 256 *et seq*.) The trial court dismissed the petition and the Fourth District upheld the dismissal on *res judicata* grounds. *Seal III*, 2014-Ohio-5415. The appeals court laid out Seal's underlying theory for his Fifth Ground for Relief:

> {¶ 6} Seal's first three claims for relief were brought under the theory that law enforcement was at the property found to have the active methamphetamine lab under false pretenses. Particularly, Seal contends that law enforcement was out to get him; was on a fishing expedition; and lied about the existence of a 911 call as an excuse to enter the property. Seal further contends that law enforcement included this alleged falsehood about the 911 call in an affidavit used to secure a search warrant of the property. Seal also posits that the county prosecutor knew that no 911 call had ever been made, failed to disclose this fact to Seal during pre-trial discovery, and allowed law enforcement officers to testify at trial about the existence of a 911 call. Coming full circle, Seal asserts that his own trial lawyer knew the 911 call was nonexistent, was complicit with law enforcement, the prosecutor, and the trial judge, and thus did not challenge the constitutionality of the search. In support of his fourth claim for relief, Seal contends that his trial lawyer was also

ineffective for failing to fully investigate the case and for failing to subpoena witnesses who were present at the property on the day of the search.

*Seal III*, 2014-Ohio-5415 at ¶ 6.

Explaining its *res judicata* conclusion, the Fourth District wrote:

> {¶ 15} Although the trial court did not rely on res judicata as a reason to deny Seal's petition, we believe that the doctrine is applicable. Seal admits in his petition for post-conviction relief, in his appellate brief in support of this appeal, and in his motion for exculpatory evidence that both he and his trial counsel knew of the non-existence of the alleged 911 call and the State's failure to produce the 911 recording well before his jury trial. *See* Appellate Brief at 6, 20; Petition at 9, 24; Motion for Exculpatory Evidence at 2. Thus, Seal's claims of prosecutorial misconduct could have and should have been raised either during pre-trial discovery or at trial. At the very least, they should have been raised in Seal's direct appeal. We also do not believe that Seal's presentation of evidence dehors the record defeats the application of res judicata. The only piece of evidence that arguably supports Seal's claim that no 911 call was made, outside of his self-serving recitation of the facts, is the sheriff dispatch log. But even that piece of evidence is inconclusive, as it explicitly documents a received call indicating sheriff assistance requested at the residence, but does not indicate whether the call originated from the 911 line or not. This evidence is only marginally significant and does not advance Seal's claims beyond mere hypothesis.

*Id.*

Relying on this holding, Respondent argues the Fifth Ground for relief is barred by Seal's procedural default in presenting it to the Ohio courts (Return, ECF No. 14, PageID 901-03). The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio's doctrine of *res judicata* in criminal cases was first enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967). It has been repeatedly held to be an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Seal argues the rule was not actually enforced against him because the trial court did not rely on it and there was a division in the court of appeals. That does not equate to non-enforcement because the appellate court acted, as it always does, by majority vote and the majority expressly enforced the *res judicata* rule. In his opinion concurring in the judgment, Judge Harsha concluded there was no reason to discuss *res judicata* because the trial court was clearly correct in dismissing the petition on the merits. *Seal III*, 2014-Ohio-5415 at ¶¶ 23-25. In particular he dealt with the supposed evidence *dehors* the record:

> Seal's own exhibit indicates that the call requesting help actually occurred. The fact that it may not have come in as a formal 911 call is only marginally relevant. In other words, he cannot prove he suffered any actual prejudice because his own evidence proves the deputy responded to a call for assistance, rather than "inventing" a call to illegally search the premises as Seal alleges. If a mischaracterization of the nature of the call occurred, it did not result in a constitutional violation.

*Id.* at ¶ 23. "[P]resentation of competent, relevant, and material evidence *dehors* the record may defeat the application of *res judicata*." *State v. Lawson*, 103 Ohio App. 3d 307 (12th Dist. 1995). But none of the state court judges concluded that Seal had presented such evidence.

A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015). Seal asserts cause in the failure of the State to turn over exculpatory evidence at the time of trial (Reply,

ECF No. 19, PageID 1231-35). This argument turns on Seal's characterization of the 911 call as non-existent, but Judge Harsha's concurring opinion adequately deals with that point. Seal has an elaborate theory of how 911 calls generate dispatches and how, because there was no 911 call, the arrival of the deputy sheriff at the property where the meth lab was found was all pretextual. All of this theory is conjecture, unsupported by evidence.

A habeas petitioner can overcome a procedural default by making a showing of actual innocence. "[I]f a habeas petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995). Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317.

To establish actual innocence, however, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain 'rare'" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

Seal claims the benefit of the actual innocence exception to procedural default (Reply, ECF No. 19, PageID 1235-38). However he has presented no new evidence at all, but merely reargued the evidence that was before the trial jury.

Petitioner has not overcome the procedural default enforced against him by the Fourth

District.  Therefore his Fifth Ground for Relief is barred by that default.

**Ground Six:  Ineffective Assistance of Trial Counsel for Failure to File a Motion to Suppress**

In his Sixth Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel because his trial attorney did not file a motion to suppress the evidence that was seized. This Ground for Relief is barred by the same procedural default that bars Ground Five.

**Ground Seven:  Ineffective Assistance of Trial Counsel**

In his Seventh Ground for Relief, Petitioner asserts he was denied the effective assistance of trial counsel by his attorney's lack of preparation including failure to subpoena witnesses and to appropriately cross-examine the State's witnesses.  This Ground for Relief is barred by the same procedural default that bars Ground Five.

**Ground Eight:  Ineffective Assistance of Trial Counsel Because of Conflict of Interest**

In his Eighth Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel because his trial attorney had represented the State's key witness, Mark Ervin, in a prior drug case two years before Seal was prosecuted.

Seal first presented this claim in his motion for leave to file a delayed motion for new trial which was filed February 26, 2016.  The trial court denied the motion on the grounds it was untimely and the Fourth District affirmed on that basis.  *State v. Seal,* Case No. 2017-Ohio-116,

75 N.E.3d 1035 (4th Dist. Jan. 9, 2017)("*Seal V*"), appellate jurisdiction declined, 149 Ohio St. 3d 1433 (2017). The court explained that a motion for new trial under Ohio R. Crim. P. 33 and based on newly discovered evidence must be filed within 120 days of the verdict unless a defendant shows by "clear and convincing proof that [he] was unavoidably prevented from the discovery of the evidence upon which he must rely." *Id.* at ¶ 10, quoting Criminal Rule 33(B). Once the evidence has been discovered, the motion for leave to file a delayed motion for new trial must, in accordance with precedent, be filed within a reasonable time after the discovery. *Id* at ¶ 12. The Fourth District found that Seal was aware of the evidence he was relying on since 2013, but failed to file until February 2016. *Id.* at ¶ 13. It found that delay was unreasonable. *Id.* at ¶ 15.

Respondent asserts a procedural default defense, arguing that all the elements of *Maupin, supra,* have been met. The Magistrate Judge agrees. Ohio Criminal Rule 33 is certainly firmly established: it is part of the rules of criminal procedure promulgated by the Ohio Supreme Court under the Modern Courts Amendment to the Ohio Constitution. The time limit was actually enforced against Petitioner by both the trial court and the Fourth District.

The adequacy of the state ground is determined by examining the State's legitimate interests in the procedural rule in light of the federal interest in considering federal claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)*, citing Henry v. Mississippi,* 379 U.S. 443, 446-48 (1965). The adequacy of a state procedural bar is itself a federal question. *Cone v. Bell,* 556 U.S. 449,465 (2009), *citing Lee v. Kemna*, 534 U.S. 362, 375 (2002); see also *Coleman v. Thompson*, 501 U.S. 722, 736 (1991). States have a strong interest in the finality of criminal adjudications because of the familiar problems of assembling evidence, particularly witness recollections, years after the events in suit.

Seal asserts he can show cause and prejudice to excuse the default in that his motion for

new trial depends on exculpatory evidence the State failed to turn over (Reply, ECF No. 19, PageID 1231-35). In *Seal V,* the Fourth District noted that most of the evidence Seal relied on in the new trial motion was available to him in 2013. *Seal V*, 2017-Ohio-116 at ¶ 13. While he had assembled more evidence after that, the court noted that Ohio law does not permit a defendant to delay filing his motion for new trial until he has assembled all the evidence he wants to use to bolster his case. *Id.* at ¶ 14. Considering the facts on which Seal relies, the Magistrate Judge concurs with this finding: the bulk of those facts were in Seal's hands a considerable time before he sought leave to file a new trial motion.

Seal also relies on the miscarriage of justice/actual innocence exception to attempt to overcome his procedural default of this ground, but here as well he presents no new evidence of the kind required by *Schlup v. Delo, supra*.

Ground for Relief Eight is therefore barred by Petitioner's procedural default – untimely filing – in presenting it to the state courts.

## Ground Nine:  State's Withholding of Exculpatory Evidence

In his Ninth Ground for Relief, Petitioner asserts the State violated his right to exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). This Ground is procedurally defaulted on the same basis as Ground Eight.

## Ground Ten:  State's Withholding of Exculpatory Evidence

In his Tenth Ground for Relief, Petitioner complains of the withholding of different

exculpatory evidence from that pleaded in Ground Nine.  However, this Ground is procedurally defaulted on the same basis as Ground Eight.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

May 21, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).