**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

ARTHUR SEAL,

              Petitioner,     :     Case No. 1:16-cv-392

   - vs -                          District Judge Michael R. Barrett
                                       Magistrate Judge Michael R. Merz

JEFFREY NOBLE, Warden,
  London Correctional Institution

                               :

              Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus action is before the Court Petitioner's Objections (ECF No. 26) to the Magistrate Judge's Report and Recommendations recommending dismissal of the Petition ("Report," ECF No. 23). District Judge Barrett has recommitted the case for reconsideration in light of the Objections (Recommittal Order, ECF No. 27).

Arthur Seal brought this action *pro se* under 28 U.S.C. § 2254 to obtain relief from his conviction in the Highland County Court of Common Pleas on counts of illegal manufacturing of drugs, illegal assembly/possession of chemicals for the manufacturing of drugs, and endangering children. The Report recites the procedural history of the case, including five decisions of the Fourth District Court of Appeals. *State v. Seal*, 2014-Ohio-4167, 20 N.E.3d 292 (4th Dist. 2014)("*Seal I*"), appellate jurisdiction declined, 142 Ohio St. 3d 1411 (2015); *State v. Seal*, 4th Dist. Highland Case No. 13CA10, 2014-Ohio-4168 (Sep. 16, 2014)("*Seal II*"), appellate jurisdiction declined, 142 Ohio St. 3d 1411 (2015); *State v. Seal*, 4th Dist. Highland Case No. 13CA15, 2014-Ohio-5415, (Dec. 4, 2014)("*Seal III*"), appellate jurisdiction denied, 142 Ohio St.

3d 1453 (2015); *State v. Seal,* Case No. 13CA1 (4th Dist., Jan. 23, 2015)(unreported; copy at ECF No. 13-1, PageID 585)("*Seal IV*"), appellate jurisdiction declined, 142 Ohio St. 3d 1453 (2015); and *State v. Seal,* 2017-Ohio-116, 75 N.E.3d 1035 (4th Dist. 2017)("*Seal V*"), appellate jurisdiction declined, 149 Ohio St. 3d 1433 (2017).

Seal pleads the following grounds for relief[1]

> **GROUND ONE:** The State violated Petitioner's 5th and 14th Amendments trial counsel also violated the petitioner's 6th Amen. right to effective assistance of counsel.
>
> **Supporting Facts:** The State knew that a camper on Rob Coburns property was a storage unit but isolated the camper at trial as the petitioner's home to convict the defendant therefore there was two housing units which the statute on child endangering requires proof that the child be in the same housing unit and within 100 feet. Trial court committed plain error and counsel was ineffective for not giving the jury the proper elements.
>
> **GROUND TWO:** I was denied the right to the effective assistance of Appellant counsel as guaranteed by the 5th 6th and 14th Amendments of the U.S. Const.
>
> **Supporting Facts:** The charges of Manufacturing and possession of chemicals to manufacture and Child Endangering are Allied Offenses of similar import and should be merged together. Trial Court committed plain error, Appellant counsel was ineffective, and this placed the Petitioner in double jeopardy. The manufacturing and possession of chemicals clearly merge under the statute of O.R.C.§ 2941.25(A).
>
> **GROUND THREE:** Petitioner's Six Amendment rights was violated Appellant counsels was ineffective and trial court violated Petitioner's Fifth and 14th Amend, due process of the law.
>
> **Supporting Facts:** The trial court restricted the State witnesses' testimony to the camper and barred any questioning of the house, the trial court restricted the police officer's testimony. The Petitioner was prevented from establishing that the witness was manufacturing.

---

[1] The Grounds for Relief are quoted verbatim from the Petition. The Magistrate Judge has not added *sic* to mark the spelling and usage errors in the interest of not interrupting the flow and not wishing to show any disrespect to the Petitioner.

**GROUND FOUR**: Petitioner was denied due process of law, in violation of the 5th, 6th 14th Amendment of the United States Constitution.

**Supporting Facts:** The trial court abused its discretion and violated Petitioner's rights when it denied the petitioner request pursuant to the Ohio Public Records Act for the alleged 911 call that the State alleged was the basis for the illegal search and seizure and the charges brought against him.

**GROUND FIVE:** The petitioner's due process was violated, the State violated the petitioner 4th, 5th, 6th and 14th Amendments of the U.S.

**Supporting Facts:** The petitioner presented credible evidence the State withheld exculpatory evidence, that the police fabricated the existence of a 911 call, and the ensuing search was unconstitutional and renders Petitioner's conviction void. The dispatch log that I recovered from the sheriff's states:

> Received call from unknown male (937) 661-4239. advised he needed a sheriff at 50/Chari subject then said there here and phone went dead. 3614 will check. Officer Seaman showed up at 5094 US RT. 50. claiming the sheriff office receive 911 To waive the 4th Amendment, and Seaman began his illegal search of the property, and house. Then the officer swore to 911 call and claimed be smelled ether to obtain a search warrant. Then testified all through trial to a 911 call, and testified that he smelled ether to make it appear an emergency existed, were the petitioner was staying.

**GROUND SIX:** I was denied Effective Assistance of Trial Counsel, violating 4th, 5th, 6th, and 14th Amendments of the United States Constitution.

**Supporting Facts:** Trial counsel should have filed a motion to suppress the evidence collected in the unlawful search. The petitioner provided evidence that their was no 911 call. The dispatch log doesn't give an address, any reasonable competent attorney would have filed a motion to suppress. Robert Coburn stated the camper was storage. The petitioner even had a few things stored in it. The police also found couple pieces of petitioner's old mail, to a different address in the camper. Petitioner was temporary residing at Coburn's residence. I had a reasonable expectation of privacy at

the property. The State isolated the camper as petitioners residents. This was counsel reason for not filing a motion to suppress because the petitioner did not live in a camper that the State now confirms as storage.

**GROUND SEVEN:** I was denied effective assistance of trial counsel violating my 4th, 5th, 6th, and 14th Amendments of the U.S. Constitution.

**Supporting Facts:** Trial counsel failed to conduct any investigation prior to trial failed to present a valid defense, or create a record for appeal or subpoena any witnesses. Robert Coburn confirms a camper as storage in his backyard, and claims possession, of the residence in the Affidavit to the search warrant. The State and their only witness, Mark Ervin claimed, I lived in this camper, and was making METH. This isolated the trial to the camper to convict the petitioner. Trial counsel never questioned the home owner Robert Coburn. There was witnesses there to testify I was in the house, and had walked outside. Then during the search of Coburn's and Mark Ervin's rooms, there was three pseudoephed receipts, clear liquids Damprid lithium batteries pill crusher coffee filter, etc. Counsel failed to bring this issues to the record. The appellant court confirms the camper as storage, and places me in possession of Coburns residence with mail to a different address.

**GROUND EIGHT:** I was denied effective assistance of trial counsel, violating my 4th, 5th, 6th, and 14th Amendments of the United States Constitution.

**Supporting Facts:** Trial counsel William Armintrout labored under an actual conflict of interest. The conflict adversely affected his performance. Trial counsel presented no defense against the State's star witness Mark Ervin. At know time did Armintrout disclose his conflict of Interest to petitioner. The conflict prevent trial counsel from filing further discovery and motions.

Exhibit B 1-8 in the motion for a new trial demonstrates. Mark Ervin was charged with a felony 3, October 13, 2010 for Illegal Assembly, or possession of chemicals to manufacture METH. Mark Ervin did purchase muratic acid, pseudpoephed, Further in the Affidavit Terry Finely admits that Mark Ervin was getting items to make METH Ervin was also suspected of trying to steal Drano. The petitioners name is implicated in this. Petitioner was not aware of this or questioned or involved. Armintrout Plead Ervin down to M-1, the court place no contact for Ervin to stay away from petitioner.

The case at hand Mark Ervin was arrested for METH and used in affidavit, to gain a search warrant June 4, 2012, which is now part of the record. The Affidavit to the search warrant is designed to charge the defendant for the alleged meth lab June 4th 2012. The next day an active warrant for over purchase of pseudoephed was recalled and dismissed on Ervin this was concealed by the state.

Trial counsel never challenged, the anonymous 911 call that supposedly come from, some unknown location, trial counsel never challenged the B.C.I. lab results, that states clear liquid, counsel stipulated to the B.C.I. Results and let officer Seamen testify to a smell of ETHIER, and a 911 call that doesn't factually exist. Counsel let Ervin testified to one theft at trial. Ervin testified to the process of making meth to convict the petitioner. Trial counsel knew this testimony was false.

Either Mark Ervin is allowed to make METH, or Highland County Police let him build a case against petition to escape his prior charges. Ervin has more meth related manufacturing charges than what trial counsel represented him on.

**GROUND NINE**: The State withheld exculpatory evidence and impeaching evidence of the State's witness violating petitioner 5th, 6th, and 14th Amendment to the U.S. Constitution.

**Supporting Facts:** The State withheld Mark Ervin criminal record, withheld probation violation and the courts no contacts to stay away from petitioner? June 4, 2012, Officer Seaman was responding to an anonymous 911 call. Mark Ervin was found in possession of METH. Ervin told the police, Petitioner was cooking METH in a Camper. This information was used to obtain a search warrant then later petitioner was indicted.

Mark Ervin testified to one theft. Then Mark Ervin gave testimony to the manufacturing process to convict the petitioner. The State was letting Ervin testify to get his felony 5 of possession of METH dropped to an M-1. In the State discovery November 20, 2012, the State provided one theft charge for Mr. Ervin.

On June 17, 2010, Mark Ervin was charged for possession of METH, a felony 5 and charge for chemicals to manufacture METH a felony 3. The court dropped the METH charge and reduce the felony 3 to M-1, the court then placed no contact between Ervin and I. I wasn't questioned or involved.

A few months later October 13, Ervin again was charged with Chemicals to make METH a felony 3, again the court dropped this to a M-1, once again Ervin implicated the petitioner in the Affidavit I was not questioned or involved then after the state used Mark Ervin, in the affidavit to the search warrant aimed at petitioner June 4, 2012, the next day the State with drew an active warrant and dismissed Ervin's over purchase of pseudoephed charge June 6, 2012, the main ingredient for METH.

The petitioner maintains his innocence. While petitioner's direct appeal was pending. A Bill of Particular was filed Nov. 3, 2014. Ervin is admitting to manufacturing meth, in apartment in Hillsboro. In April 11, 2014, then finally Nov. 19, 2014, Mark Ervin plead guilty to 2 Illegal assembly possession of Chemicals to manufacture. Exhibits A(l-10) B(l-8) C(l-2) E(l-2) F(l-2) G(l-4) H and I(l-4) fully support these facts in the motion for a new trial.

**GROUND TEN:** The State violated petitioner 4th, 5th, 6th and 14th Amendments of the U.S. Constitution.

**Supporting Facts:** The State withheld exculpatory evidence demonstrating Robert Coburn as the perpatrature and would have established ownership of the Illegal activity, and established possession of property.

The State isolated a camper that was used for storage, as petitioner home to convict the petitioner for a lab on Robert Coburn property June 4, 2012, Robert Coburns house was suspect to a METH lab and Coburn was found in possession of METH, November 26, 2012. The Petitioner trial was December 3, 2012, Defendant attached (Exhibit J-1 through 2) in the motion for new trial.

The non disclosed evidence would have compelled the petitioner to subpoena the owner Robert Coburn. Demonstrating that it was Coburn and the State star witness, manufacturing. June 4, 2012, It would have showed Coburn was in possession of the lab June 4th, 2012, and November 26, 2012, Coburn could have testified how he wasn't charged for active mix in a camper on his property June 4, 2012, that the state was convicting the petitioner for.

The state would not need to proceed any further to miss lead the court and the jury, to put the petitioner in possession of Coburn, active mix and property June 4, 2012, with frivolous mail to a different address and the police testifying that they seen petitioner at a different location at a camper That appeared to be the camper at Coburn's house June 4, 2012.

6

(Petition, ECF No. 1).

# Analysis

**Ground One:  Conviction on Insufficient Evidence; Ineffective Assistance of Trial Counsel**

The Report analyzed the First Ground for Relief as challenging the sufficiency of the evidence for the child endangering conviction and his trial attorney's failure to argue the elements of that offense in the way Seal argues is correct.  The Report recommended deferring to the Fourth District on the sufficiency of the evidence and concluding there was no prejudice from failure to argue the elements, as Seal asserts, because the Fourth District refused to accept his interpretation (Report, ECF No. 23, PageID 1300-09).

In his Objections, Seal concedes there was sufficient evidence for the child endangering conviction, but not for the two drugs charges (Objections, ECF No. 26, PageID 1325-27).  But that is not a claim he raised on direct appeal; his challenge there was only to the quantum of evidence on child endangering.  *Seal I,* ¶¶ 16-23.  Any claim that there was insufficient evidence on the two drug charges is procedurally defaulted by failure to raise it on direct appeal.

Seal argues that "[t]his is a case of actual innocence."  (Objections, ECF No. 26, PageID 1326, citing *House v. Bell*, 547 U.S. 518 (2006)).  But the evidence he points to is not new evidence, but evidence available at the time of trial and presented to the jury.  Thus, his procedural default cannot be excused under the "miscarriage of justice" exception (*See, e.g.*, *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (emphasis added) ("the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the *new evidence*.)

**Ground Two: Double Jeopardy**

In his Second Ground for Relief, Seal argued that convicting him on all three counts violated his rights under the Double Jeopardy Clause in that they should have been merged under Ohio Revised Code § 2941.25. The Fourth District found the child endangering conviction was not covered by Ohio Revised Code § 2941.25, and the Report recommended dismissing the claim as to the child endangering count on that basis. Seal does not disagree with this conclusion (Objections, ECF No. 1327). As to the other two offenses, the Fourth District concluded they were not committed by the same conduct and therefore should not be merged. While Seal objects, he makes no argument as to why that finding was not supported by the evidence (Objections, ECF No. 1327).

**Ground Three: Denial of Confrontation Rights**

In his Third Ground for Relief, Seal argues his Confrontation Clause rights were violated when his trial attorney was limited in cross-examination of Marc Ervin. This claim was not raised on direct appeal, but Seal argued that omission constituted ineffective assistance of appellate counsel. In *Seal IV* the Fourth District concluded the limits the trial judge imposed were constitutional. The Report agreed that it was not ineffective assistance of appellate counsel to fail to raise an assignment of error which would likely have failed. (Report, ECF No. 23, PageID 1313.

The specific cross-examination question Seal claims his attorney was not permitted to ask was "about Ervin's own possession of drugs at the time of the law enforcement search." *Seal IV*, ¶ 21. But Ervin admitted he was receiving a plea deal for his involvement with the same incident and testimony against Seal and that he was a meth user who was in possession of meth at the time of the raid. *Id.* at ¶ 23. Seal has not suggested what more information could have been obtained by further questioning on these topics.

The Report cited *Delaware v. Van Arsdall,* 475 U.S. 673, 681 (1986), as providing the relevant constitutional standard. In the Objections, Seal argues the relevant case is *Davis v. Alaska*, 415 U.S. 308 (1974), which he says clearly establishes his position (ECF No. 26, PageID 1328). *Davis v. Alaska* held that a State's interest in protecting the anonymity of a juvenile offender did not prevent cross-examining that juvenile about his prior adjudication for burglary and that he was on probation for that offense. There was no attempt in this case to shield Ervin from cross-examination on the basis that he was a juvenile.

Since Ervin admitted the fact Seal wanted him confronted about – his possession of meth at the time of the raid – it is difficult to see what additional information would have been obtained on this topic.[2] And even if this claim is arguable, Seal has not shown it was so likely to be successful that omitting it was ineffective assistance of appellate counsel.

In his Objections, Seal attempts to raise new claims about a denial of cross-examination of law enforcement about Mark Ervin (ECF No. 26, PageID 1328-29.) This claim is procedurally defaulted because it was never raised on direct appeal or as a claim of ineffective assistance of appellate counsel in the 26(B) application.

---

[2] Seal has not reproduced that portion of the transcript where the questioning was halted and the Fourth District did not quote it.

**Ground Four: Public Records Request – Withdrawn.**

(ECF No. 26, Page ID 1329.)

**Ground Five: Withholding of Exculpatory Evidence; Police Misconduct; Unconstitutional Search**

In his Fifth Ground for Relief, Petitioner asserts his due process rights were violated by the State's withholding exculpatory evidence, by police fabrication of the initiating 911 call, and by the unconstitutionality of the search which produced the evidence against him. These claims were presented in Seal's Petition for Post-Conviction Relief under Ohio Revised Code § 2953.21. The Fourth District held they were barred by *res judicata*, because they could have been raised on direct appeal. *Seal III* 2014-Ohio-5415,¶¶ 6, 15. Noting that the Sixth Circuit has repeatedly upheld Ohio's *res judicata* rule as an independent and adequate state procedural ground of decision, the Report recommended dismissing Ground Five as procedurally defaulted.

Seal's theory is that a call to the police about a meth lab at the location where he was found is a complete fabrication of Deputy Seaman and Marc Ervin, working in conspiracy to frame Seal. To reach this conclusion, he puts emphasis on the fact that the initiating call was referred to before the jury as a "911 call," but did not in fact come in through that number.

The Report quotes Judge Harsha's concurrence in the judgment in *Seal III* which shows, from evidence Seal himself submitted to the courts, that "a call requesting help actually occurred." 2014-Ohio-5415, ¶ 23. He noted that "[t]he fact that it may not have come in as a formal 911 call is only marginally relevant." *Id.*

Because of the successful penetration of the 911 system in American culture, it is probable that most members of the general public never memorize the general (non-911) police and fire telephone numbers as the undersigned had to do as a young person. But that does not mean that any particular legal significance is attached to the fact that an emergency call is generated by calling 911. An anonymous tip remains just that, whether it comes from the tipster's dialing 911 or in some other way. Anonymous tips, whether made through the 911 system or otherwise, do not create probable cause to search.

**Ground Six: Ineffective Assistance of Trial Counsel for Failure to File a Motion to Suppress**

In his Sixth Ground for Relief, Seal asserts his trial attorney provided ineffective assistance by not filing a motion to suppress the evidence that was seized. The Report recommended dismissing this claim on basis of the same procedural default as Ground Five (Report, ECF No. 23, PageID 1319).

Seal objects that this claim was properly presented in his post-conviction petition. A claim to this effect can be found in the State Court Record in the Petition for Post-Conviction Relief, at where Seal relates that he asked his attorney, George Armintrout, to file a motion to suppress and Armintrout responded that he did not have standing because the searched house and camper were not his (ECF No. 13, PageID 267). In his post-conviction petition, and again on appeal from denial of that petition, Seal made very generalized claims of ineffective assistance of trial counsel, but did include a claim of failure to file a motion to suppress. The Fourth District held that the facts needed to raise this claim were of record and known to Seal at the time of the first appeal, but were not raised in that proceeding. *Seal III* 2014-Ohio-5415, ¶ 16. Seal objects that this claim could

11

not have been brought on direct appeal "due to it being off the record." However, the trial court record would have shown the absence of a motion to suppress, the evidence that was seized and introduced, and the circumstances under which the seizure occurred. The facts that Seal told Armintrout to file a motion to suppress and the response Armintrout made are not in the record, but they are also not necessary to present the claim. The Ohio *res judicata* rule does not allow a defendant to omit a claim on direct appeal just because he may have some evidence to support it which is not of record. Rather because this claim could have been argued on appeal on the basis of the record, Seal was bound not to withhold it.

In his Objections Seal asserts a motion to suppress "would have established that there never was a 9-1-1 call." (ECF No. 26, PageID 1331). The purpose of a motion to suppress is to keep out of evidence items that were unconstitutionally seized. It could not have had an impact on the call that the Sheriff's Office did receive. Assuming the standing problem could have been overcome, a motion to suppress could have excluded any physical evidence that was unconstitutionally seized, but Seal has not shown that Armintrout's advice about standing was legally incorrect. The Objections point out that Armintrout did object to identification of a course for the call, and Judge Coss sustained that objection. (*Id.* at PageID 1332).

Seal recounts trial testimony that Detectives Seaman and Sanders separately saw Seal with the camper at other locations after June 4, 2012. He concludes: "This is convenient for the State. Nowhere in discovery was there any evidence that these police saw Seal with this camper. Of course the jury is going to believe the police." (*Id.* at PageID 1332-33). This is tantamount to arguing the police should not be believed unless they make a contemporaneous video recording of all that they are going to later testify to. While that is certainly an argument that can be made to a jury, it is not the law that the police must wear body cams which are operable at all times.

**Ground Seven: Ineffective Assistance of Trial Counsel**

Ground Seven presents another claim of ineffective assistance of trial counsel which the Fourth District found barred by *res judicata*, and the Report agreed (ECF No. 23, PageID 1319). Seal objects that Armintrout's failure to call witnesses, "investigate the case," or "present a valid defense" could not have been presented on direct appeal (ECF No. 26, PageID 1333). The Fourth District's treatment of this claim is cursory, but the trial judge had made findings of fact which support his decision, in particular that the Petition was supported only by Seal's mother (Decision, State Court Record, ECF No. 13, PageID 320). That clearly implies there were not affidavits from other witness who were prepared to testify at trial and what they would have testified about. Seal's Seventh Ground for Relief is barred by his procedural default in presenting any competent evidence in post-conviction to support this claim.

**Ground Eight: Ineffective Assistance of Trial Counsel Because of Conflict of Interest**

In his Eighth Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel because his trial attorney had represented the State's key witness, Mark Ervin, in a prior drug case two years before Seal was prosecuted.

Seal first presented this claim in a motion for new trial filed in February 2016, and the trial court denied it as untimely. The Fourth District agreed, noting most of the facts on which Seal relied were not "new" evidence, but had been in his hands as of June 2013. *Seal V*. The Report agreed that Seal procedurally defaulted this claim on the basis found by the Fourth District (ECF

No. 23, PageID 1320-21).

Seal claims he can show cause and prejudice to excuse this procedural default because the conflict of interest is a "structural error." But even if the motion had been timely, it does not show that attorney Armintrout had an actual conflict of interest. From the court docket exhibits Seal submitted with the motion, it appears Armintrout had represented Ervin in 2010 on drug-related charges, but there is no showing he continued to represent Ervin after the conclusion of those proceedings, nor did he represent Ervin on any charges arising out of the incident of June 4, 2012. If it were the case that an attorney appointed to represent a defendant in one case could not later represent another defendant in an unrelated case in which the first client had become a witness, the whole system of appointed counsel or public defender offices would break down, because new lawyers would have to be recruited every time a former client became a witness. In particular kinds of crimes (e.g. drug trafficking) in small communities, the same people are likely to be repeatedly involved. The Constitution does not require this extraordinary accommodation.

**Grounds Nine: State's Withholding of Exculpatory Evidence (Ervin)**

In his Ninth Ground for Relief, Seal asserts that the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The Report found the claim was procedurally defaulted because it was first presented in an untimely motion for new trial (ECF No. 23, PageID 132).

The gravamen of this claim, as recited in the Objections, is that the State did not disclose the entire criminal history of Marc Ervin (ECF No. 26, PageID 1344). In denying leave to file an untimely motion for new trial, Judge Coss explained that the evidence in question – conviction of

14

a misdemeanor drug charge – would not have been admissible in evidence or usable to cross-examine Ervin precisely because it was a misdemeanor conviction and not a felony, even though initially charged as a felony. (Decision and Entry, State Court Record, ECF No. 13-1, PageID 726 et seq, citing Ohio R. Evid. 609).

**Ground Ten: State's Withholding of Exculpatory Evidence (Coburn).**

In his Tenth Ground for Relief, Seal argues the State again violated his *Brady* rights when it failed disclose information about Robert Coburn. Judge Coss found, in denying the motion for new trial on this claim, that "[i]t is unclear exactly what evidence he is claiming should have been disclosed" because both Seal and the State argued Coburn owned the land where the camper was located. (*Id.* at PageID 731). The Report recommended dismissing this claim as procedurally defaulted on the same basis as Ground Eight, procedural default in untimely filing (ECF No. 23, PageID 1321-22).

As part of his Objections on this Ground, Seal claims that "[p]rocedural bars are much to [sic] widely, and improperly used. If a Petitioner can not simply follow the rules that are applied to him (by statute and rule) and not be procedurally barred when he is really not barred at all, is criminal in itself." (ECF No. 26, PageID 1345). It is certainly true that habeas corpus law is very complex and does, in many instances, prevent the federal courts from reaching the merits of claims. But the lower courts, such as this one, must follow the law as enunciated by the appellate and Supreme Courts, which includes enforcing the statute of limitations and procedural default when it occurs. It is not a matter of discretion, but of our being bound by precedent.

In his Objections, Seal suggests that the owner of the house was arrested on

methamphetamine-related charges as well, and this was not disclosed. But the seizure of methamphetamine from Coburn happened in November 2012. Seal seems to be arguing that this would have supported his theory of an alternative perpetrator – Coburn this time instead of Ervin. But a possession charge in November 2012 would have been only speculatively relevant to a claim of manufacture in June 2012, as Judge Coss pointed out in denying the motion. As best the Magistrate Judge can tell from the State Court Record, Coburn was not a trial witness against Seal, and he could not even have been impeached with this conviction if it was a misdemeanor.

The Report recommended holding Seal's untimeliness against him. He objects that there really is no time limit on a motion for new trial under Ohio R. Crim. P. 33, so he did not violate any state procedural rule. The "rule" in question is more of a standard: a defendant must use due diligence to uncover the new evidence, and that will vary from case to case. In any event, the Fourth District did enforce this rule against Seal, and its enforcement was not unreasonable; after all, Coburn's ownership of the property and subsequent possession conviction would be matters of public record.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again recommends that it be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

July 10, 2018.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. . Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).